UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,

    -against-                        **MEMORANDUM AND ORDER**
                                                Case No. 07-CR-841 (FB)

BARRY COHAN,

                Defendant.
------------------------------------------------------x

*Appearances:*
For the United States:                     *For the Defendant*:
LORETTA E. LYNCH, ESQ.            RONALD RUSSO, ESQ.
United States Attorney                   Schlam Stone & Dolan, LLP
Eastern District of New York          26 Broadway, 19th Floor
271 Cadman Plaza East                New York, New York 10004
Brooklyn, New York 11201

By:    CHARLES KLEINBERG, ESQ.
        MARY DICKMAN, ESQ.
        Assistant United States Attorneys

**BLOCK, Senior District Judge:**

        It is settled law that restitution and forfeiture may be imposed concurrently. *See, e.g., United States v. Torres*, 703 F.3d 194, 202 (2d Cir. 2012) ("The imposition of both forfeiture and restitution in this case was proper."). But the two remedies "as a matter of fact, frequently compete for the same assets of a convicted defendant." *United States v. Rubin*, 558 F. Supp. 2d 411, 420-21 (E.D.N.Y. 2008).

        Barry Cohan is currently subject to a forfeiture judgment of $600,000 and a restitution judgment of $607,186. He argues that the government should be estopped from enforcing the restitution judgment by virtue of an alleged promise it made to apply forfeited funds to restitution. The Court rejects that argument, but writes principally to

address the appropriate prioritization of payment of Cohan's forfeiture and restitution obligations.

I

**A. Plea and Sentencing**

Cohan pleaded guilty to one count of health care fraud, *see* 18 U.S.C. § 1347, and one count of aggravated identity theft, *see id.* § 1028A. In a plea agreement, Cohan acknowledged that the consequences of his crimes would include restitution in an amount "[t]o be determined." Plea Agreement ¶ 1 (citing 18 U.S.C. §§ 3663-3663A). He further consented to entry of a forfeiture judgment in the amount of $600,000. He agreed that his interest in an investment account and two savings accounts would be forfeited and "credited towards the Forfeiture Money Judgment." Plea Agreement ¶ 5. In the event the forfeiture judgment was not satisfied in full, Cohan acknowledged that the government could "execute the Forfeiture Money Judgment upon any other assets of the defendant, up to the outstanding balance, pursuant to 21 U.S.C. § 853(p)." *Id.* ¶ 9.

The plea agreement contained a merger clause:

> Apart from the written proffer agreement dated November 21, 2006, no promises, agreement or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties. Apart from the written proffer agreement, this agreement supersedes all prior promises, agreements or conditions between the parties.

*Id.* ¶ 14.

Cohan appeared for sentencing on May 28, 2010. After discussing incarceration and supervised release, the Court turned to the financial aspects of the

2

sentence. It expressed concern that satisfaction of the forfeiture judgment might sap Cohan's ability to pay restitution to the victims of his frauds, the Port Authority of New York & New Jersey ("Port Authority"), and Align Technology, Inc. ("Align"). *See* Tr. of May 28, 2010, at 8 ("[O]bviously he's not going to have any money left over to pay the victim[.]"). Assistant United States Attorney Daniel Brownell ("Brownell") stated that it was his understanding that "the money will ultimately go to the Port Authority," but that he did not have a "definitive answer." *Id.* at 9. For his part, defense counsel represented that "getting the money back to the Port Authority is certainly something that Dr. Cohan is anxious to do as well." *Id.* at 10.

The Court reserved judgment and asked the parties to further address their disparate positions in letter submissions. Both subsequent responses acknowledged the well-settled rule, cited above, that restitution and forfeiture may be imposed concurrently. Defense counsel asserted, however, that he had "long understood that the Government, in its discretion, intend[ed] to allocate the funds it seized from Dr. Cohan for forfeiture toward the restitution obligation." Letter from Ronald Russo (June 15, 2010) at 2. He stated his belief that such an intent was "consistent with the applicable laws [and] DOJ regulations." *Id.* The government responded that it has not made any representations that would support defense counsel's understanding.

Having considered the parties' submissions, the Court entered judgment. In addition to imposing a sentence of incarceration and supervised release, it imposed the forfeiture and restitution judgments. With respect to the former, it ordered the forfeiture of the assets specified in the plea agreement and ordered Cohan to pay the balance.

3

## B. Post-Sentencing Developments

The government's execution of the forfeiture order yielded a total of $222,054.26. Cohan did not pay the $377,945.74 balance. Accordingly, on the government's motion, the Court amended the order to direct forfeiture of Cohan's interest in the apartment from which he operated his dental practice.

With respect to restitution, Cohan paid a total of $675 during his incarceration. He thereafter stopped making payments. The government applied for a writ of garnishment directed to Stifel, Nicolaus & Company ("Stifel"); the answer to the writ attested that Cohan's accounts at Stifel had a total value of $559,624.07 as of April 25, 2013. The government later applied for a writ of garnishment directed to Financial Network Investment Corporation ("FNIC"); the answer to the writ attested that Cohan's accounts at FNIC had a total value of $67,875.67 as of November 21, 2013. In addition, the government moved to further amend the forfeiture order to direct forfeiture of Cohan's interest in those accounts.

By way of objection to the government's collection efforts, defense counsel repeated his assertion that the government had agreed to apply forfeited funds to the restitution obligation. In response, the government continued to deny any such agreement. In addition, it argued that the plea agreement's merger clause barred consideration of the purported agreement. Finally, it represented that Department of Justice ("DOJ") policy limits its discretionary authority to apply forfeited funds to restitution obligations to cases in which the defendant otherwise lacks the resources to pay restitution. *See United States v. Pescatore*, 637 F.3d 128, 138 (2d Cir. 2011) ("[T]he DOJ Manual dealing with forfeitures

4

and with compensation for crime victims indicates that discretion may be exercised to transfer forfeited assets to victims where other property is not available to satisfy the order of restitution[.]" (internal quotation marks omitted)).

The Court held an evidentiary hearing on October 9, 2013. AUSA Brownell and David Wikstrom ("Wikstrom")—co-counsel for Cohan during the plea negotiations—testified.

Brownell testified that he did not tell anyone that funds forfeited by Cohan would be turned over to the victims in satisfaction of his restitution obligation. He further testified that he was not a forfeiture assistant, and that he would not "promise that forfeiture is going to be restitution unless I know what I'm talking about." Tr. of Oct. 9, 2013, at 25.

Wikstrom testified that Brownell told him during plea negotiations that his understanding was "that the money is given over to the victim internally." *Id.* at 34. He further testified that he had represented a client in an unrelated matter. His client—Ilya Mugerman—pleaded guilty to health-care fraud; the plea agreement included a $1.2 million forfeiture provision. In attempting to settle a civil RICO action by one of the fraud victims, Wikstrom asked Karen Hennigan, a forfeiture assistant, to confirm that the funds forfeited by Mugerman would be turned over to victims. According to Wikstrom, Hennigan said that her office would make a request to DOJ to disperse the forfeited funds to victims:

> You informed me that such requests are routine and typically granted, although they might be denied where a particular

>   defendant had the means to satisfy such victims independently, i.e., lottery winners and the like.

Def.'s Ex. B.

At the conclusion of the hearing, the Court directed the government to ascertain the victims' positions on the matter. On November 1, 2013, the government submitted a letter representing that the Port Authority "is willing to wait for the monies to be collected through the garnishment process," and that Align "supports all efforts to get the Defendant to pay the full amount of both of his obligations." Letter from Mary M. Dickman (Nov. 1, 2013), at 2.

## II

Cohan argues that the government's purported promise to apply forfeited funds to his restitution obligation estops it from seeking any other funds to satisfy that obligation. In discussing that issue with the parties, the Court expressed its view that satisfaction of the restitution judgment should take priority over satisfaction of the forfeiture judgment. *See, e.g.,* Tr. of Oct. 9, 2013, at 12 ("[W]e're going to explore whether the court has some discretion here to see that the victims get paid first . . . . That's what interests me about this dynamic."). The Court addresses each issue in turn.

**A. Concurrent Forfeiture and Restitution**

The fundamental reason forfeiture and restitution may be imposed concurrently is that each serves a different purpose. "Criminal forfeiture focuses on the disgorgement by a defendant of his ill-gotten gains." *United States v. Torres*, 692 F.3d 136, 146 (2d Cir. 2012) (internal quotation marks omitted). By contrast, "the purpose of

6

restitution is essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006).

These different purposes entail other differences. Forfeited assets become the property of the United States. *See* 18 U.S.C. § 982(f)(7) (governing forfeiture for health-care offenses). They are subject to seizure upon entry of an order of forfeiture. *See* 21 U.S.C. § 853(g) ("Upon entry of an order of forfeiture under this section, the court shall authorize the Attorney General to seize all property ordered forfeited upon such terms and conditions as the court shall deem proper.").

Restitution, on the other hand, is owed to the victim. *See* 18 U.S.C. § 3663A(a)(1). Administratively, however, it is collected by the government. *Id.* § 3612(c) ("The Attorney General shall be responsible for collection of an unpaid fine or restitution . . . ."). As part of its collection responsibility, the government may seek writs of garnishment. *See United States v. Witham*, 648 F.3d 40, 49 (1st Cir. 2011); *United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) (both holding that the Federal Debt Collection Procedures Act applies to enforcement of restitution obligations to private parties).

Notwithstanding their differences, forfeiture and restitution overlap in cases where the defendant's gain corresponds to the victim's loss. "[O]nce some *payment* has been made by way of restitution," the Second Circuit has said, "a defendant would be in a position to argue that such a payment should be a credit against any then remaining forfeiture amount." *United States v. Kalish*, 626 F.3d 165, 169-170 (2d Cir. 2010). "The forfeiture amount represents ill-gotten gains, and it is at least arguable that any money

7

returned to a victim has reduced the amount of ill-gotten gains remaining in the defendant's possession." *Id.* at 170 (citations and internal quotation marks omitted).

Since the defendant in *Kalish* had not made any restitution payments, the Second Circuit did not decide "whether such an argument would prevail." *Id.* The Seventh Circuit has expressly rejected it. *See United States v. Emerson*, 128 F.3d 557, 566-68 (7th Cir. 1997). In any event, the argument is not available to Cohan because he agreed to forfeiture in the amount of $600,000; he did not demand any set-off for restitution, which the plea agreement explicitly contemplated. *Accord United States v. Steel*, 2012 WL 5879143, at *2 (E.D.N.Y. Nov. 21, 2012).

In addition, the plea agreement's merger clause provides that the written agreement represents the entirety of the parties' bargain and supersedes "all prior promises, agreements or conditions." Plea Agreement ¶ 14. Since the plea agreement does not contain any agreement to apply forfeited funds to Cohan's restitution obligation, his purported understanding is at odds with the merger clause. *See Jarecki v. Shung Moo Louie*, 95 N.Y.2d 665, 669 (2001) ("The purpose of a merger clause is . . . to bar the introduction of extrinsic evidence to alter, vary or contradict the terms of the writing."); *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004) ("In general, plea agreements are subject to ordinary contract law principles, except that any ambiguity is resolved strictly against the Government." (internal quotation marks omitted)).

Even if the merger clause did not bar Cohan's argument outright, the Court would infer—based on the parties' submissions and testimony adduced at the hearing—that any statements that the forfeited funds would eventually be turned over to

8

the Port Authority were premised on the assumption that Cohan lacked sufficient assets to satisfy both his forfeiture and restitution obligations. That assumption is reflected in the Court's statement at sentencing that Cohan "obviously [was] not going to have any money left over to pay the victim." Tr. of May 28, 2010, at 8. It is, moreover, consistent with DOJ's policy and Hennigan's statement to Wikstrom that a request to pay forfeited funds to victims "might be denied where a particular defendant had the means to satisfy such victims independently." Def.'s Ex. B.

Subsequent events have shown that the assumption that Cohan lacked the means to pay restitution was not well-founded. The government's collection efforts have uncovered more than $627,000.00 in liquid assets in addition to the $222,054.26 it seized pursuant to the forfeiture order.[1] Whether those assets were initially concealed from the government or not, the fact remains that Cohan has sufficient assets to satisfy his restitution obligation. Accordingly, the Court concludes that Cohan must satisfy his restitution obligation separate and apart from any forfeited funds; any understanding about what might happen to funds forfeited by an impecunious defendant is irrelevant.

**B. Priority**

Having concluded that Cohan must pay both restitution and forfeiture, the Court turns to the issue of priority. It is helpful at this point to summarize the basis for the Court's concern that restitution should, if possible, take precedence over forfeiture:

---

[1] The government has also identified several non-liquid assets; thus far, it has not sought to have those assets forfeited or seized in satisfaction of Cohan's restitution obligation.

|  |  |
|---|---|
| Forfeiture judgment: | $600,000.00 |
| Forfeited to date: | <u>222,054.26</u> (plus apartment) |
| Forfeiture balance: | $377,945.74 (minus apartment) |
|  |  |
| Restitution judgment: | $607,186.00 |
| Paid to date: | <u>675.00</u> |
| Restitution balance: | $606,511.00 |
|  |  |
| TOTAL OBLIGATIONS | $984,456.74 (minus apartment) |
|  |  |
| Stifel Assets: | $559,624.07 |
| FNIC Assets: | 67,875.67 |
|  |  |
| TOTAL ADDITIONAL ASSETS | $627,499.74 |

As matters now stand, there is a shortfall of more than $350,000 (less the value of the apartment, which is in dispute) in Cohan's ability to satisfy his remaining forfeiture and restitution obligations. Unless the government uncovers more assets, someone is going to go begging. Even if more assets are found, someone will bear the consequences of the delay. The Court fully agrees with Judge Garaufis's observation in *Steel*, cited above, that "it is not apparent why victims of criminal activity should not be compensated for their proven losses *before* the Government received a defendant's ill-gotten gains." 2012 WL 5879143, at *2.

The relevant statutes do not expressly establish any priority between forfeiture and restitution. As Judge Garaufis noted, however, "where the Government is entitled to restitution, Congress has mandated that the court 'shall ensure that all other victims receive full restitution before the United States receives any restitution.'" *Id.* (quoting 18 U.S.C. § 3664(i)). Similarly, the statute giving the government collection responsibility establishes the following priority for disbursements:

>
> (1) A penalty assessment under section 3013 of title 18, United States Code [i.e., the mandatory special assessment of $100 per count of conviction].
>
> (2) Restitution of all victims.
>
> (3) All other fines, penalties, costs, and other payments required under the sentence.

18 U.S.C. § 3612(c). Although forfeited assets are not "collected" in the same sense that fines are, forfeiture is often treated as a closely related concept. *See, e.g., Austin v. United States*, 509 U.S. 602, 618 (1993) ("[T]his Court . . . consistently has recognized that forfeiture serves, at least in part, to punish the owner."). From these statutory "hints," the Court discerns—as Judge Garaufis did in *Steel*—some authority to prioritize restitution over forfeiture.

In *Steel*, the priority was incorporated into the forfeiture order. *See* 2012 WL 5879143, at *3 ("[T]he accompanying forfeiture order specifies that any payments made by Defendant Steel shall first be directed to his outstanding restitution obligations. After his restitution has been satisfied, any further payments shall be directed to the Government in satisfaction of the forfeiture order."). In this case, the forfeiture order has already been entered and, more importantly, partially executed.

With respect to assets already forfeited, a court's authority must co-exist with the Attorney General's explicit authority to "restore forfeited property to victims." 21 U.S.C. § 853(i)(1). The Second Circuit has held that that authority is discretionary, and that DOJ's policy of declining to transfer forfeited assets to victims when the defendant has the

11

means to independently satisfy his restitution obligation is not an abuse of discretion. *See Pescatore*, 637 F.3d at 137-38.

There is also a conceptual obstacle to requiring the government to treat assets already forfeited as restitution. Ownership of those assets has already been transferred from Cohan to the government. Reallocating them to restitution at this point would mean using *government* assets to satisfy *Cohan*'s obligation, and there is no mechanism for the government to seek further forfeiture to replace those assets. The result would be a reduction in Cohan's total financial obligation—a result the Court has already rejected.

There is no corresponding concern for assets that have not yet been allocated. For those assets, the Court can give restitution priority without impinging on the government's authority to dispose of forfeited assets or inadvertently reducing the amount of forfeiture to which it is entitled.

The Court's research has not revealed any cases exploring the difference between assets already forfeited and assets still in the defendant's possession. Yet the difference is significant in any case in which both forfeiture and restitution are imposed. Going forward, the Court will not sign any forfeiture order without first assessing the possible impact on restitution.

**III**

In accordance with the foregoing, the Court will sign the proposed second amended forfeiture order, with the proviso that the government not execute the order until Cohan's restitution obligation is satisfied in full. In that regard, the Court directs Stifel and FNIC to transfer all funds subject to the writs of garnishment to the United States. *See* 28

U.S.C. § 3205(7) (authorizing court to direct disposition of funds subject to writs of garnishment). The government shall furnish a copy of this memorandum and order to Stifel and FNIC, along with instructions for the transfer. Upon receipt of the funds, the government shall immediately disburse them, with the $675 already received, to the Port Authority and Align in the amounts set forth in the Court's judgment dated July 23, 2010. The government shall notify the Court when the disbursements are complete.

**SO ORDERED.**

     /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 23, 2013